**The PEOPLE of the State of Colorado ex rel. Jeris A. DANIELSON, State Engineer; and Robert W. Jesse, Division Engineer for Water Division No. 2, Plaintiffs-Appellants,**

v.

**AMITY MUTUAL IRRIGATION COMPANY, a Colorado Mutual Irrigation Corporation, Defendant-Appellee.**

No. 81SA467.

Supreme Court of Colorado,
En Banc.

Aug. 29, 1983.

Rehearing Denied Sept. 26, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., David Aschkinasi, Asst. Atty. Gen., Denver, for plaintiffs-appellants.

Carl M. Shinn, Lamar, for defendant-appellee.

LOHR, Justice.

This case has its origin in a dispute between the Colorado state engineer[1] and Amity Mutual Irrigation Company (Amity) concerning the obligations of the State of Colorado under the Arkansas River Compact, article 69 of title 37, C.R.S.1973, to deliver stored water from the John Martin Reservoir to the Kansas state line for the benefit of Kansas users. We affirm the judgment of the water court dismissing the state engineer's complaint for injunctive relief against Amity.

The relevant facts can be briefly summarized. On April 1, 1978, the water commissioner for water district no. 67, located on the Arkansas River downstream from John Martin Reservoir, issued a letter, with the approval of the division engineer, notifying the ditch companies in water district no. 67 that "[c]ompact conservation water" would be released from the reservoir on April 10, 1978, and directing each ditch company not to divert water for a period of 24 hours from the time the released water should first reach its respective headgate. The purpose of this directive was to enhance prospects for the delivery of a sufficient quantity of water at the Kansas line to satisfy what the state engineer believed to be the obligations of the State of Colorado under the Arkansas River Compact. On April 7, 1978, Amity advised the water com-

---

1. The appellants are styled "The People of the State of Colorado ex rel. Jeris A. Danielson, State Engineer; and Robert W. Jesse, Division Engineer for Water Division No. 2." Unless the context otherwise requires, the term "state engineer" as used in this opinion refers to those parties collectively.

missioner by letter that it regarded his order to be "arbitrary, capricious, and illegal" and that Amity did not intend to comply.

The state engineer then brought this action requesting injunctive relief to prevent Amity from diverting water contrary to the terms of the water commissioner's letter order and to require that Amity "make no future diversions except with the approval and under the direction of the said division engineer or his duly authorized water commissioner."[2] After a trial, the water judge for water division no. 2 made comprehensive findings of fact and conclusions of law and issued a judgment dismissing the complaint on the merits. The state engineer appealed, asserting various errors; Amity cross-appealed, contending that the water judge lacked jurisdiction to construe the Arkansas River Compact.

The state engineer's opening brief states that "[i]n the course of preparing this appeal, new evidence was discovered which established that the water commissioner's order to the ditches of water district 67 was based on an erroneous interpretation of the Arkansas River Compact. For that reason, the state has abandoned its appeal from that portion of the water judge's ruling related to administration under the [Arkansas River] compact." The state engineer urges, however, that the appeal is not moot because the water court assertedly erred in taking judicial notice of the effect of stock ponds and wells on river flow and incorrectly ruled that the water commissioner's order violated constitutional standards of due

process and equal protection of the laws. In its cross-appeal Amity does not object to the dismissal of the complaint, but argues that the water court should have ruled that it lacked jurisdiction to consider the issues rather than disposing of them on the merits in Amity's favor.

In sum, neither the state engineer nor Amity takes issue with the dismissal of the complaint; both object to rulings underlying that disposition. We decline to give advisory opinions on the propriety of evidential rulings,[3] determinations of jurisdiction, or correctness of legal reasoning where, as here, no party disagrees with the disposition effected by the water court.

Judgment affirmed.

---

2. Buffalo Mutual Irrigation Company also was a party defendant in the water court but stipulated to entry of a consent decree. No issue involving that defendant is before this court on appeal.

3. The state engineer expresses concern that the water court's finding, based on judicial notice, that stock ponds and wells constructed after ratification of the Arkansas River Compact have materially depleted the waters of the Arkansas River could be used collaterally against the state in future proceedings. Collateral estoppel is applicable, however, only when the party against whom the plea is asserted had "a full and fair opportunity to litigate the issue in the prior adjudication." *Pomeroy v. Waitkus,*

183 Colo. 344, 351, 517 P.2d 396, 399 (1973). Here the water court took judicial notice while the case was under advisement without first giving the parties an opportunity to be heard. This was within his prerogative. *See* C.R.E. 201(c) and (f). As the relief granted was ultimately acceptable to all parties, there would have been no reason for the water court to grant a request under C.R.E. 201(e) for an opportunity to be heard as to the propriety of taking judicial notice. Under these circumstances it could not be maintained that the state engineer had a full and fair opportunity to litigate the correctness of the water court's decision to take judicial notice of the effect of stock ponds and wells on the flow of the Arkansas River.